OF THE

## STATE OF MISSOURI

AT THE

### APRIL TERM, 1902.

*(Continued from Volume 168.)*

### SINGER MANUFACTURING COMPANY v. STEPHENS et al., Appellants.

#### Division One, May 21, 1902.

1. **Appellate Practice:** ERRORS PATENT OF RECORD. For mere formal defects patent of record, a judgment should not be reversed, unless timely advantage is taken thereof by calling the court's attention thereto by motion for new trial or in arrest.

2. ———: ——— FINDING OF COURT. Where a finding of facts is not called for by either party, a general finding by the court in whose favor the decree is rendered, or the finding of such ultimate facts as will authorize the decree rendered, is sufficient. Before the recital of facts can be considered as a part of the record proper, there must be something to indicate that the decree was predicated upon them as upon an agreed statement.

3. ———: FRAUDULENT CONVEYANCE: TO HINDER CREDITORS: APPARENT CREDIT. In a suit to set aside a deed on the ground that it was made to hinder the creditors of the grantor, it is held that the decree of the court requiring the grantee to pay the judgment debt of the grantor was authorized by a finding that although the grantee was the real owner of the land prior to the creation of the debt and

accepted the deed thereto in good faith and without contemplating fraud on the rights of any one, yet she suffered the record title to remain in such debtor, whereby he on the strength of his apparent ownership of the land induced his creditors to extend to him a credit which otherwise would have been denied him.

4. ——: ——: ——: ——: IMPEACHMENT BY ERROR PATENT OF RECORD. A recital by a court in its finding of facts "that the deed was made and adopted by the grantee in good faith and without fraud on her part," does not impair the validity or correctness of the decree subjecting the land to the claim of a creditor of the grantor, the apparent owner at the time the debt was made.

5. ——: ——: ——: ——: KNOWLEDGE. Nor was it necessary that the grantee should have known that her grantor was obtaining credit on the strength of his apparent ownership of the land of which she was the actual owner, in order to subject that land to the payment of his debts. If a wrong results to the grantor's creditors by reason of the grantee's conduct in giving the grantor such apparent ownership, then the land may be made to pay the debt.

Appeal from Chariton Circuit Court.—*Hon. Jno. P. Butler,* Judge.

AFFIRMED.

*Crawley & Son* and *H. K. & H. J. West* for appellants.

(1) While a trial court is not required to set forth its finding on all the questions of fact involved in a suit in equity, yet, in order for the decree to stand, there must be either a general finding of the facts for the party in whose favor the decree is rendered, or a finding of such ultimate facts as will authorize the rendition of the decree. In a suit to set aside a deed for fraud, in order for a decree in favor of the plaintiff to stand, there must be a general finding for plaintiff or a finding of such facts as will authorize the deed to be set aside. In the absence of such finding, the only judgment which the court is authorized to render is one dismissing the bill. Robinson v. McCune, 128 Mo. 587. (2) When it appears on the face of the decree, by the facts found, that the decree is for

the wrong party, this court will reverse the decree of the lower court and remand the cause with directions to enter the decree which should have been rendered by the lower court.    And this is true, even though no exceptions were saved and no motion for a new trial or motion in arrest was filed.    Land Co. v. Bretz, 125 Mo. 418.    (3) The facts found by the court do not authorize the decree rendered.    Hord v. Harlan, 143 Mo. 469; Bank v. Rohrer, 138 Mo. 369; Davis v. Owenby, 14 Mo. 171; Valentine v. Hovener, 20 Mo. 133; Stillwell v. McDonald, 39 Mo. 282; Reed v. Omby, 44 Mo. 204; Maupin v. Emmons, 47 Mo. 304; Sappington v. Oeschili, 49 Mo. 244; Perkins v. Meighan, 147 Mo. 617; State to use v. O'Neil, 151 Mo. 67; Bank v. Buck, 123 Mo. 141; Bank v. Doran, 109 Mo. 42; 7 Ballard's Law of Real Property, sec. 346; Jones on Real Property, sec. 1390; Fox v. Hall, 74 Mo. 315; Lander v. Ziehr, 150 Mo. 403; Bank v. Newkirk, 144 Mo. 467.    While we do not contend that this case stands squarely on all fours with any reported case in this State, we do say that the decree rendered in this case is in direct conflict with the doctrines and principles announced in numerous well-considered decisions of this court, and that the decree rendered is not supported by the doctrines or principles announced in any reported case in the State.    Under the facts found, the deed to Clifton was, in fact, a mortgage, though in form it was an absolute conveyance. It was made to secure an honest debt owing by Mrs. Stephens to Clifton.    It was not made to enable Clifton to obtain fictitious credit, nor was it made to get the property out of the name of Mrs. Stephens to enable her to defeat creditors.    After that note was given, Mrs. Stephens, without any knowledge that it had been given, and without any knowledge that Clifton had obtained any credit from any one, paid the debt secured by the deed to her father and received a deed from him, which was in effect a release of his mortgage.    Long after she had recorded that deed, this suit was brought to set the deed aside for fraud in obtaining it.    The title was in Clifton

Singer Mfg. Co. v. Stephens.

to secure an honest debt. There is no finding that he was engaged in any business in which he was in the habit of obtaining credit, or that Mrs. Stephens ever knew of his receiving credit or of his intention to attempt to secure it. The facts disclose that Mrs. Stephens, the mortgagor, was in the possession of the land and that she and her husband had made lasting and valuable improvements upon it. These facts did not authorize the decree rendered. In the long line of cases in this State, analogous to this, not one can be found that goes to the length to which the trial court went in the case at bar.

*Willard P. Cave, J. C. Wallace* and *C. C. Hammond* for respondent.

(1) Appellant having failed to preserve the evidence in this case as required by rule 7 of this court (this being an equity case), it is impossible for this court to review the evidence; the findings of the trial court as to the facts are not binding upon this court. Bradley v. Welch, 100 Mo. 257. The case of Land Co. v. Bretz, 125 Mo. 418, differs materially from this case. There the finding of facts had been specially made by the court by agreement of the parties as an agreed case. In the case at bar, the court on its own motion made the findings of fact without any agreement or suggestion from the parties to this cause; respondent, therefore, denies that said findings of fact are any part of the record proper. It is submitted that in view of appellant's failure to comply with the rules of this court as herein stated, said appeal should be dismissed. (2) "Another quality of equitable remedies is their unlimited variety of form. It is absolutely impossible to enumerate all the special kinds of relief which may be granted, or to place any bounds to the power of the courts in shaping the relief in accordance with the circumstances of particular cases. As the nature and incidents of proprietary rights and interests, and of the circumstances attending them,

and of the relations arising from them are practically unlimited, so are the kinds and forms of specific relief applicable to these circumstances and relations." 1 Pomeroy's Equity Jurisprudence, sec. 170, p. 153. Plaintiffs' petition in this case contained a general prayer for equitable relief, and the facts detailed in the evidence warranted the court in making the decree which is the object of appellant's attack. The error, if error there be, in the form of the decree, is against respondent, who, under the evidence was entitled to the specific relief prayed for, to-wit, the setting aside of appellant's deed; appellant should not therefore be heard to complain. R. S. 1899, sec. 865; McGuire v. Nugent, 103 Mo. 161.

ROBINSON, J.—This suit was begun by the filing of a petition in two counts. The first count was in ejectment for the possession of eighty acres of land in Chariton county, described as the north half of the northwest quarter of section 21, township 55, of range 18. The second count was in equity to set aside a deed made by the defendant Charles C. Clifton, to the defendant Isabel Stephens, to the eighty acres of land described in the first count, on the alleged ground that the deed was made without consideration and for the fraudulent purpose of hindering, delaying and defrauding the plaintiff, a creditor of said defendant Clifton, in the collection of its debt. In this count of the petition it is also alleged that the above-named land had been levied upon and sold as the property of the defendant Clifton to satisfy a judgment against said Clifton and others in favor of this plaintiff, and that plaintiff had become the purchaser of same at that sale. To plaintiff's petition the defendant Isabel Stephens filed her separate answer as follows:

"Isabel Stephens, one of the defendants, for her separate answer to the petition, says she is now and was at all times mentioned in the petition, the real and beneficial owner of the land in controversy, and as such owner was and is in possession

thereof, claiming the same as her own absolute property. This defendant says that whatever title her father, Charles C. Clifton, had to said land was held for her benefit, and denies that the deed from him to her was made to or accepted by her for the purpose of hindering, delaying or defrauding the creditors of said Clifton or any of them, and says that she accepted said deed in good faith, and denies each and every other allegation contained in plaintiff's petition."

Upon the issues thus joined of record the case was tried by the court, resulting in the following decree, with the court's finding of facts incorporated therein:

"Now on this eighteenth day of April, 1899, come again the parties plaintiff and defendant and upon the evidence heretofore submitted as well for the defendant as for the plaintiff, the court finds as follows, to-wit:

"First. Upon the second [first] count of the petition the court finds for the defendants. It is therefore considered and adjudged by the court here that as to said second [first] count, plaintiff's petition be dismissed, that it take nothing by its writ and that the defendants and each of them go hence without delay, and that they have and recover of and from the plaintiff their costs in this behalf, taxed at the sum of $ . . . as hereinafter specified.

"Second. Upon the second count of the petition the court finds that the land in controversy, viz., the north half northwest quarter, section twenty-one, township 55, range 18, in Chariton county, Missouri, was owned by one James Guthridge, who is the stepfather-in-law of the defendant, Isabel Stephens, and that the defendant, Isabel Stephens, is the daughter of her co-defendant, Charles C. Clifton, and that on or about the year 1888, the said James Guthridge agreed to sell the land to the defendant, Isabel Stephens, for which she was to pay $500, a sum much less than the real value thereof; that the deed thereto was made to defendant, Charles C. Clifton; that said purchase money was in part paid by borrowing

from the county school fund of Chariton county, Missouri, in the name of Clifton, the sum of $400, which was paid to Guthridge; that the remaining $100 was paid by the defendant, Clifton, and by reason of that fact the deed was made from Guthridge to him. That on the eighth day of December, 1893, and while defendant Clifton was holding the title to said land, the defendant executed to J. R. Campbell, for the Singer Sewing Machine Company, a note for the sum of $153, due and payable one year after date, at eight per cent interest from date. The court further finds that at or about the time of the execution of the deed from Guthridge to Clifton, the defendant Isabel Stephens, and her husband, Charles R. Stephens, took possession of said land, and have made valuable and lasting improvements thereon, and that said land is now worth about the sum of $1,200. The court further finds that on or about November 5, 1894, defendant Charles R. Stephens, husband of Isabel, paid to defendant Charles C. Clifton, $105, in payment of the money paid by Clifton to Guthridge, as part of the purchase money of said land, and on last said date said Clifton made a deed conveying the legal title to said land in controversy to the said Isabel Stephens, which said deed was recorded in the recorder's office of Chariton county, Missouri, November 13, 1894, in book 58, at page 626. The court further finds that the plaintiff, as the assignee and legal holder of the note which Clifton and others, other than Isabel Stephens, had previously executed, brought suit thereon and recovered judgment in the Chariton Circuit Court, for the sum of $169.65, together with costs taxed at the sum of $15.85, on April 15, 1895. That an execution issued on this judgment, under which the sheriff sold and the plaintiff purchased the land in controversy, as the property of defendant Charles C. Clifton, at said sheriff's sale, on October 31, 1895, and received a sheriff's deed therefor, and after receiving said sheriff's deed the plaintiff brought this suit to recover possession thereof. The court further finds that at the time of

the execution of the note to Campbell for plaintiff, that the apparent title to the land in controversy was in said Clifton. The court further finds that the defendant, Charles C. Clifton, at the time of the execution of the note to Campbell for plaintiff, resided with his daughter, the defendant Isabel Stephens, and her husband, Charles R. Stephens, and that at the time Campbell took said note said Clifton represented himself to be the owner, and that Campbell relying upon such representations and upon the fact that the record showed said Clifton to be the owner as he claimed to be, accepted the note from said Clifton and others in discharge of the obligations of one Lloyd for whom said Clifton and others, other than Isabel Stephens, were at the time securities to the plaintiff. The court further finds, that the conveyance to defendant Isabel Stephens, was made to and accepted by her in good faith and without fraud on her part.

"The court therefore orders and adjudges and decrees as follows:

"1. It is ordered, adjudged and decreed by the court here as to the second count of plaintiff's petition that the same be dismissed, that the plaintiff take nothing by his writ in that behalf and that the defendants recover of and from the plaintiff their costs in this behalf, taxed at the sum of $ . . . in manner and form as hereinafter specified.

"2. As to the relief prayed by the plaintiff under the first count of its petition it is ordered, adjudged and decreed by the court here that the plaintiff have and recover against the defendants, to be paid and satisfied only out of the proceeds of the sale of said land to be made under the execution issued herein and not otherwise, the sum of $225, with interest at the rate of six per cent per annum from this date, which is hereby adjudged to be a first and prior lien upon the north half of the northwest quarter of section twenty-one, in township fifty-five, in range eighteen, in Chariton county, and that said land be ordered sold to satisfy said judgment and interest and the

costs as herein specified, unless the defendant shall within ninety days from this date pay said judgment, interest and costs. It is further ordered, adjudged and decreed by the court here that in the event that said land be sold under this judgment that the net proceeds, if any, after paying said judgment, interest and costs incident to this sale, shall be paid over to the said Isabel Stephens. It is further ordered, adjudged and decreed by the court here that upon the payment of said sum and interest within ninety days as herein specified, the plaintiff make, execute and deliver to the defendant, Isabel Stephens, a quitclaim deed or other sufficient conveyance for said land.

"3. It is further adjudged by the court here that the plaintiff pay the costs of its own witnesses, together with the cost of summoning same and including also the cost of all depositions taken in its behalf, together with one-half of the other costs not otherwise adjudged, in all taxed at the sum of $30. That the defendants be adjudged to pay the cost of their own witnesses together with the cost of summoning them, together with one-half of the other cost not otherwise adjudged, in all taxed at the sum of $35.

"It is further adjudged and decreed that at the expiration of ninety days from this date that a special execution issue to enforce this judgment and decree, and that this finding and decree be entered of record as and for the judgment of the court in this behalf."

From the decree thus entered the defendant Isabel Stephens alone has appealed, assigning as her sole reason for its reversal by this court, "that upon the facts found by the trial court the decree is not authorized." No bill of exceptions has been filed preserving the testimony upon which the case was heard, nor is there anything in the record to indicate that a motion for a new trial or in arrest of judgment was ever filed by defendant, in order to give the trial court an opportunity to correct any error or alleged error, if in fact error was

made, by the trial court, as appellant contends. If it be conceded that error appearing upon the face of the record proper may be reviewed in this court in the absence of a bill of exceptions filed as when there is a clear want of power in the trial court to pronounce judgment or decree entered, it is equally as certain under our liberal procedure, that for mere formal defects, though patent of record, the reversal of a judgment or decree made and entered should never occur, unless timely advantage thereof was taken in some appropriate way, and the trial court first given opportunity to correct the error itself. But if we are to treat the recitals of the findings of facts as made by the court in this instance, as part of the record proper in the case, to which we may look, since the case has been brought to us for review without any bill of exceptions preserving the testimony presented to the trial court, there is nothing therein to indicate that the decree was predicated alone upon the facts as recited, as upon an agreed statement.

Where a finding of the facts by the court is not called for by either party to a suit, a general finding by the court for the party in whose favor the decree is rendered, or a finding of such ultimate facts as will authorize the decree rendered, is sufficient. A recital of the findings upon all the subsidiary facts upon which a decree is based, has never been deemed necessary to its validity, and its indulgence by the trial court would result in a prolixity tending to confusion rather than otherwise. The essential facts authorizing the decree entered herein by the trial court, in so far as concerns the defendant, Isabel Stephens, who alone has appealed therefrom, do, however, appear from the record that appellant has brought to this court, and they are these: that although the appellant was found to have been the real owner of the land in controversy prior to the creation of the debt of plaintiff's assignor, and although she was found to have accepted the deed to the land at the time it was made in good faith and without the contem-

plation of a fraud upon the rights of any one, the court found that while she was the real owner of the land, she suffered the record title thereof to be and remain in her co-defendant Charles Clifton, whereby he on the strength of his apparent ownership of same induced the plaintiff's assignor to extend to him a credit which otherwise would have been denied.

The mere recital by the court in its finding of facts, "that the conveyance [of the land] to the defendant Isabel Stephens, was made and accepted by her in good faith and without fraud on her part," is no impeachment of the correctness or the validity of the decree subjecting appellant's land to the claim of a creditor of the apparent owner of the land, prior to the time appellant was invested with the legal title thereto, in November, 1894.

It was not necessary that the defendant Isabel Stephens should actually have known that her co-defendant Clifton was obtaining credits from the plaintiff's assignor on the faith of his apparent ownership of the land in controversy which stood of record in his name; or that she did in fact know that credit had actually been extended to Clifton's creditor on the faith of his apparent ownership of the land, prior to the time the conveyance of the land was made to her.

Actual knowledge of either of those conditions on part of appellant would have amounted to a positive fraud against plaintiff, and of this the court's finding of facts shows she was not guilty; but the decree entered was predicated upon the fact, not that an intentional fraud was committed by appellant upon the plaintiff, but that a wrong had resulted to plaintiff by means of the conduct of appellant in so managing her property that plaintiff was induced to give to another on the strength of his apparent ownership of it, a credit which otherwise would have been denied. Looking alone to the finding of facts as made by the trial court, which have been preserved in the record as presented to us, we can not say that the decree

as entered was unauthorized, as appellant contends, and as nothing else is before us for consideration, the decree as rendered should be affirmed, and it is so ordered.   All concur.