## COX v. DOWD.

(Filed December 1, 1903.)

1. ASSIGNMENTS—*Married Women—Stocks—Husband and Wife.*

Where a *feme sole* assigns stock in blank and after marriage new stock is issued to her, and she assigns the same to the same parties without assuming control thereof, such assignment is valid without the consent of the husband.

2. SURETYSHIP—*Release—Extension—Stocks—Assignments—Married Women.*

Where a person assigns stock in blank and allows another person to use the same as collateral without any knowledge on the part of the person to whom given as collateral as to any conditions relative to the assignment, is not released by an extension of time in payment of the debt for which it is collateral.

ACTION by Laura B. Cox and H. J. Cox against Herman Dowd, heard by Judge *B. F. Long,* at April (Special) Term, 1903, of the Superior Court of MECKLENBURG County. From a judgment for the defendant the plaintiffs appealed.

*James A. Bell,* for the plaintiffs.
*Jones & Tillett* and *T. C. Guthrie,* for the defendant.

CLARK, C. J. The facts were found by the Judge by consent of parties, and from them it appears that in 1896 the *feme* plaintiff, then unmarried, living in Georgia but owning eight shares of stock in a cotton mill located in this State, signed at her home in Georgia a transfer on the back of the certificate of stock in blank and sent the certificate to her brother, A. C. Craig, at Charlotte, N. C., who wished to use it as collateral for a loan of $800 for three months from a bank at that place. This loan was renewed from time to time till 5 October, 1898, when her brother secured a loan of $2,000 from Mrs. L. J. Dowd, putting up said certificate

with a chattel mortgage on other property therefor, and out of the proceeds paid off the $800 loan to the bank, Mrs. Dowd having no notice of any limitation (if any) upon the authority of the holder conferred by the endorsement of the transfer of the stock in blank. In December, 1898, the plaintiff, having married, wrote her brother to have her certificate of stock changed by having it re-issued in her married name (Cox), and for this purpose the certificate was temporarily withdrawn with the understanding with Mrs. Dowd that the new certificate, when issued to Mrs. Cox, would be endorsed by her in blank as before, and would be returned and stand in the same plight and would be the same security as the certificate for which it was re-issued. This was done. The husband of Mrs. Cox did not join in said new endorsement in blank, which was also made in Georgia. At that time the plaintiff had no knowledge where or for what amount her stock was pledged. This note was renewed in October, 1899, for one year, interest being paid in advance. In December, 1899, this note, with the aforesaid collaterals, was assigned to the defendant, who, in October, 1900, renewed it for another year on the same collaterals, and the balance thereon has since been reduced by sale of the other collaterals to $829, principal and interest. When the loan of $2,000 was made by Mrs. Dowd, and at its renewal in 1899 and in 1900, the present owner of the note, the defendant Herman Dowd (who was Mrs. Dowd's son) received from Craig, the assignee of the certificate, a promise, as part consideration of the loan and its renewal, to give him, said Herman Dowd, employment. Said Herman Dowd, when the certificate of stock was re-issued in plaintiff's married name in December, 1898, knew that the stock was hers. In 1901 A. C. Craig filed his petition in bankruptcy and was discharged. When said Craig used the certificate as collateral with the bank, and afterwards with the Dowds, neither the latter nor the bank had notice of

Cox *v.* Dowd.

any restrictions upon his powers to use the same, nor did Mrs. Cox, either before or after marriage, have any notice of her brother's dealings and use of the certificate.

The question of the *feme* plaintiff's powers or disabilities as a married woman has no place here. She assigned the certificate of stock in blank while *feme sole,* and she never resumed control or possession of it at any time. After her marriage, at her request, the certificate was re-issued to her in her married name and was sent to her 6 December, 1898, solely to have the same endorsement placed on it as was on the former certificate, and for no other purpose. She asserted no control or possession, and returned the certificate transferred in blank, as before, to her brother, and the defendant's counsel, in his brief, properly admits that Mrs. Dowd's lien on said stock was valid at the maturity thereafter of the $2,000 note, 5 October, 1899.

The only question, then, is whether the renewal then and again in October, 1900, for a specified time, prepaying interest, and for the further consideration of the employment of Herman Dowd, did not release the security afforded by the deposit of the plaintiff's stock. This would be the case if her stock had been put up as security for her brother's debt, the amount of said debt and the date of its maturity being specified. But here the certificate was assigned in blank, without any restrictions, and was left thus for years in the hands of the plaintiff's brother, to do with as he pleased, without any inquiry or protest from the plaintiff or any attempt to regain possession or assert control. The unrestricted endorsement in blank, coupled with such conduct, amounted to an agreement on her part that this certificate might be continually held by her brother for his own benefit and for such use as he might see fit to make of it until she gave the holder of it notice of a change in the authority her brother had. When Mrs. Dowd made the $2,000 loan in October, 1899,

she had no notice of any restriction upon the assignment in blank of the certificate by the plaintiff, and if Craig had then filled it out with Mrs. Dowd's name it would have been a valid conveyance. She took the collateral as his security, not as a security given by Mrs. Cox, and the lien thus acquired was not changed by any subsequent notice that Mrs. Cox claimed any interest in the stock, unless, perhaps, the principal of the loan had thereafter been increased. The subsequent dealings were, in view of the lien, acquired upon the stock as Craig's, in October, 1899, and that lien still rests upon the stock to the extent of the $829 and interest, due and unpaid, of the debt contracted in October, 1899.

The recent opinion in *Havens v. Bank,* 132 N. C., 214, especially what is said at pages 222-225, renders it unnecessary to discuss the effect of a transfer in blank of a certificate of stock, which it is there held "passes the entire title, legal and equitable, in the shares," notwithstanding any requirements in the charter or by-laws that the stock shall be transferrable only on the books of the corporation. Besides cases there cited, we may add *Hirsch v. Norton,* 115 Ind., 341; 2 Thompson Corp., sec. 2368.

In holding that the certificate should be sold and out of the proceeds that the indebtedness of $829 and interest still due the defendant should be paid, there was

No error.